[No. 8850–5–I.   Division One.   August 3, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY DEAN MITCHELL, *Appellant.*

*Jon R. Zulauf* of *Eastside Defender Association,* for

appellant.

*Norm Maleng, Prosecuting Attorney,* and *Stephen Moore, Deputy,* for respondent.

CALLOW, J.—Larry Dean Mitchell appeals from a conviction of six counts of second degree burglary under RCW 9A.52.030. He argues that the trial court should have dismissed the charges against him because his right to a speedy trial under CrR 3.3 was violated.

The six residential burglaries were committed between August 7 and August 15, 1979. Shortly after each crime, the defendant, Mitchell, sold property stolen from the homes to undercover police officers acting as "fences" in a project entitled "Seattle Target Crime Impact Project" or "STCIP." The defendant was arrested and arraigned on February 1, 1980; trial was set for March 21, 1980. On August 16, 1979, however, the defendant had been arrested by a King County police officer (not part of the STCIP project) for suspicion of a seventh burglary committed on August 15, 1979; no charges were filed and the defendant was released on August 21, 1979.

The defendant contends that the speedy trial time limit began to run on August 16, 1979 because the six burglaries were "related offenses" to the seventh burglary, and the State had "probable cause" to charge him for all seven crimes when he was arrested in August. Mitchell relies on *State v. Erickson,* 22 Wn. App. 38, 587 P.2d 613 (1978).

In *State v. Erickson,* the defendant was arrested for second degree burglary and reckless driving. At the time of the arrest, police found a pistol in the glove compartment and a loaded ammunition clip in his coat pocket. Prior to his first court appearance (which was the day after his arrest), Erickson admitted that he had been convicted of violent crimes in other jurisdictions. Erickson pleaded not guilty to second degree burglary and second degree theft, the only charges filed. The charges were dismissed with prejudice after Erickson had remained in custody for 65 days without

a trial. Several weeks later, he was charged with violating RCW 9.41.040 for possessing a pistol after having been convicted of a violent crime.[1] The trial court's dismissal of the cause for violation of CrR 3.3 was upheld on appeal. It was held that the speedy trial time limit began to run when Erickson was first arrested for second degree burglary.

The opinion explained:

> Because Erickson's possession of the pistol bore an intimate relationship or was intimately connected or related to the burglary theft, we hold *it arose out of the same criminal conduct or episode.* Thus, the speedy trial time frame for prosecution and trial of the weapons charge was the same as that for the burglary charge.

(Italics ours.) *Erickson,* at 44. The court found an "intimate relationship" between the pistol and the burglary theft because Erickson was arrested in hot pursuit immediately after the crime with a loaded ammunition clip on his person, and the pistol was discovered in the impound–inventory search. "It is fair to infer that [he] had carried the gun with him into the dwelling and that he had been able to thrust it into the glove box during the chase." *Erickson,* at 43. Moreover, the court noted, if the State had joined the charge for illegal possession of the pistol with the charges for burglary and theft, the joinder would have survived a motion to sever under CrR 4.3(a)(2).[2] The State had argued that, when Erickson was arraigned, it did not have sufficient proof of his prior convictions to convict him of illegal possession of a pistol under RCW 9.41.040. The court conceded that "proof was needed of some fact or facts

[1] RCW 9.41.040 reads:

"Certain persons forbidden to possess arms. No person who has been convicted in this state or elsewhere of a crime of violence, shall own a pistol or have one in his possession or under his control. Such person upon being convicted of a violation of this section shall be guilty of a felony and punished by imprisonment in the state penitentiary for not less than one year nor more than ten years."

[2] CrR 4.3(a)(2) provides: "(a) **Joinder of Offenses.** Two or more offenses *may* be joined in one charge . . . when the offenses . . . (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. . . ." (Italics ours.)

extrinsic to the physical conduct or activity constituting the principal crime of burglary" to convict Erickson on the weapons charge, but emphasized that "probable cause to charge may be present even though the prosecution does not yet possess sufficient admissible evidence to prove its case". *Erickson*, at 44.[3]

> [I]f the State does not charge a defendant with all related offenses *arising out of the same criminal conduct or episode* as soon as it has probable cause to do so it runs the risk of a dismissal for failure to provide a speedy trial.

(Italics ours.) *Erickson*, at 45.[4]

---

[3] We reject any implication that the speedy trial rule requires prosecutors to join all charges for which "probable cause to charge" exists. Such decisions should remain within the discretion and judgment of prosecutors. Prosecutors should be required to charge and join those crimes based on the same conduct or arising from the same criminal episode when there is sufficient evidence to support the filing of each charge, or risk having those crimes not charged barred by virtue of the speedy trial rule. *See State v. Madera*, 24 Wn. App. 354, 600 P.2d 1303 (1979); *State v. Cooper*, 20 Wn. App. 659, 583 P.2d 1225 (1978).

[4] As observed in *United States v. Lovasco*, 431 U.S. 783, 790–92, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977): "[P]rosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself,' . . . From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. . . . From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited. And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts. Thus, no one's interest would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." (Footnotes and citations omitted.)

In short, in *Erickson,* the speedy trial time limit for illegal possession of the pistol began to run when Erickson was first arrested because (1) the possession arose out of the same criminal conduct or episode and (2) the State, at the time of arraignment, had sufficient evidence to charge the illegal possession. The defendant, however, contends that *Erickson*'s 2–part test, as applied to this case, is as follows: First, were the six burglaries "related offenses" to the seventh burglary? Second, did the State have a required basis to charge Mitchell for these related offenses when he was arrested in August 1979? The defendant argues that crimes are "related offenses" if they pass the joinder test of CrR 4.3(a)(2). See footnote 2, *supra.*

In *Erickson,* however, the offenses were related because they "arose out of the same criminal conduct or episode." *Erickson,* at 44. The "pistol" violation was *required* to be joined under CrR 4.3(c) if it was to survive a challenge under CrR 3.3 because it was "based on the same conduct", CrR 4.3(c)(1).[5] The defendant seeks to turn the rule upside down and require the dismissal of *all* charges if one is

---

[5]CrR 4.3(c) provides in part:

"**(c) Failure to Join Related Offenses.**

"(1) Two or more offenses are related offenses, for purposes of this rule, if they are within the jurisdiction and venue of the same court *and are based on the same conduct.*

"(2) *When a defendant has been charged with two or more related offenses, his timely motion to join them for trial should be granted unless* the court determines that because the prosecuting attorney does not have sufficient evidence to warrant trying some of the offenses at that time, or for some other reason, the ends of justice would be defeated if the motion were granted. A defendant's failure to so move constitutes a waiver of any right of joinder as to related offenses with which the defendant knew he was charged.

"(3) *A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense,* unless a motion for joinder of these offenses was previously denied or the right of joinder was waived as provided in section (b). The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted." (Italics ours.)

omitted. He attempts to turn the *permissive* joinder provisions of CrR 4.3(a)(2) into a mandatory test. The *Erickson* court merely noted that, had the charges been joined, the joinder would have survived a motion to sever. *State v. Erickson* was concerned with the required joinder of crimes arising from the "same conduct" or "single criminal episode" as is apparent from its quotation of the *ABA Standards Relating to Speedy Trial* (Approved Draft, 1968) section 4.1 and comment, as well as from its discussion of *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978) and *State v. McNeil,* 20 Wn. App. 527, 582 P.2d 524 (1978).

*State v. Peterson, supra,* upheld the dismissal of an assault charge filed several years after the defendant had been charged with assaulting another person in the same incident.

> [B]ecause the new charge arose out of the same offense and incident as the old one, the time limits of CrR 3.3 began running on the new offense as well as the old one in January 1975. CrR 3.3 does not expressly so provide. . . . [ABA Speedy Trial] Standard 2.2 recommends that the time within which trial must be held should begin on all crimes "based on the same conduct or arising from the same criminal incident" from the time the defendant is held to answer any charge with respect to that conduct or episode. CrR 4.3(c), *particularly subsection (3), appears supportive of the ABA standard here, as it expresses a preference for a single disposition of all charges arising from one incident. We apply that standard here.*

(Italics ours.) *Peterson,* at 431. Similarly, in *State v. McNeil,* the court stated: "If the time frames of CrR 3.3 are not met, the offense charged, *along with any other offense required to be joined* with that offense, shall be absolutely discharged". *McNeil,* at 533–34.

Here, the trial court properly refused to grant the motion to dismiss the six burglary charges. The prosecutor was not required to charge the defendant with the commission of any particular burglary. Since the prosecutor did not charge the commission of the seventh burglary, the time for speedy

trial did *not* begin to run in August 1979 when Mitchell was arrested for the seventh burglary. The burglaries were not "related offenses" within the meaning of the joinder provisions of CrR 4.3(c) because they were not "based on the same conduct." The six burglaries were, however, permissibly joined under CrR 4.3(a)(2) because they were "of the same or similar character."[6] The six burglaries were not related to the seventh, and therefore the time for a speedy trial began to run upon the defendant's arrest in February 1980. Trial was scheduled within the required time.

The judgment is affirmed.

SWANSON and CORBETT, JJ., concur.

Reconsideration denied August 27, 1981.

Review denied by Supreme Court November 6, 1981.

---

[6]The time for trial commences when the defendant is "held to answer" for the crime or "a crime based on the same conduct or arising from the criminal episode." 2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 12–2.2(a) (2d ed. 1980). Example No. 3 in the commentary to chapter 12, section 2.2(a) states:

C is arrested on January 1 and booked for theft 1. On January 3, C is taken into court on a complaint for theft and held to answer on that charge. Subsequent investigation establishes grounds also to proceed against the defendant for thefts 2 and 3, committed on other occasions, and therefore an indictment is obtained on January 20 for thefts 1, 2, and 3. The time for trial of theft 1 runs from January 3, but the time as to thefts 2 and 3 runs from January 20, because these latter charges are not based on the same "conduct" or the same "episode."